UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Courtney Bernard Clark,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner Tom Roy; Nannette Larson; Dr. Derek J. Schmidt; Centurion of Minnesota; Dr. Stephen Craane; Kathy Reid; David Reishus; and Katherine Powers,<br><br>    Defendants. | Case No. 15-cv-2778 (SRN/HB)<br><br>**REPORT AND RECOMMENDATION** |

Courtney Bernard Clark, Minnesota Correctional Facility-Moose Lake, 1000 Lake Shore Drive, Moose Lake, MN 55767, pro se

Timothy S. Christensen, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, Saint Paul, MN 55101, for Commissioner Tom Roy, Nannette Larson, Kathy Reid, David Reishus, and Katherine Powers

HILDY BOWBEER, United States Magistrate Judge

  This matter is before the Court on Plaintiff Courtney Bernard Clark's "Motion for Compensation Relief or Reimbursement of Property, Commissary Taken. Also School Time and Pay Compensations." [Doc. No. 147] and "Motion for a Order That Defendants Reimburse Plaintiff Clark for All Property, Canteen, Pictures, that Was Destroyed, Not Allowed, or Missing under the D.O.C. Control, MN and North Dakota." [Doc. No. 171]. While the nature of the motions is somewhat unclear, in an abundance of caution the Court will treat them as requests for injunctive relief, and therefore issues this Report and

Recommendation under 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, the Court recommends denying Plaintiff's motions for relief or reimbursement of property.

## I.  Background

Plaintiff Courtney Bernard Clark is currently an inmate, and at times relevant to this action was under the supervision of the Minnesota Correctional Facility at Oak Park Heights ("MCF–OPH") from July 11, 2014, to October 13, 2015; the North Dakota State Penitentiary at Bismarck from October 13, 2015, to July 19, 2016; the Minnesota Correctional Facility at Rush City ("MCF–RC") from July 19, 2016, to July 21, 2016; and the Minnesota Correctional Facility at Moose Lake ("MCF–ML") from July 21, 2016, to present.  (Wherley Aff. Ex. 1 at 2-3 [Doc. No. 185].)  Five Defendants are, and were, employees of the Minnesota Department of Corrections ("DOC") during the relevant events ("DOC Defendants").  The DOC Defendants are Tom Roy, Commissioner of the Minnesota Department of Corrections; Nanette Larson, DOC Director of Nursing; David Reishus, MCF–OPH Associate Warden of Operations (DOC Answer ¶¶ 39, 49, 67 [Doc No. 110]); Kathryn Reid, MCF–OPH Health Services Administrator (Reid Aff. ¶ 1 [Doc. No. 180]); and Katherine Powers-Johnson, MCF–OPH Licensed Practical Nurse (Powers-Johnson Aff. ¶ 1 [Doc. No. 184]).  Three other Defendants named in this action have not joined in opposition to these motions for preliminary relief; these Defendants are Dr. Derek J. Schmidt,[1] Centurion of Minnesota,

---

[1] Derek J. Schmidt is listed as Dr. Schmult in the Amended Complaint [Doc. No. 77], the DOC Defendants' Answer [Doc. No. 110], and the DOC Defendants' Motion for Summary Judgment [Doc. No. 177].  However, the Court recognizes that this party

and Dr. Stephen Craane.

The operative pleading is the Amended Complaint [Doc. No. 77], which was filed May 23, 2016.  The gist of the Amended Complaint is that DOC employees provided inadequate medical treatment and made decisions on medical care and housing to retaliate against and harass Plaintiff.  The Amended Complaint includes a claim that his transfer to North Dakota was in retaliation for complaints and reports he had made on his own behalf and on behalf of other prisoners about medical care and conditions in the Minnesota prisons.  (Am. Compl. at 10, 16.)

The current motions were filed on July 5, 2016, and August 12, 2016 [Doc. Nos. 147 and 171].  Plaintiff alleges "unallowable property/canteen," personal pictures, and long johns were taken from him upon his arrival at the North Dakota State Penitentiary in Bismarck when he was transferred there from MCF-OPH in October 2015 [Doc. No. 171 at 1].  He also alleges that "unallowable properties and canteen" and "legal papers" were confiscated when he was transferred from North Dakota back to Minnesota, although he does not indicate when, why, or by whom the items were confiscated [*Id.*].

Plaintiff alleges the DOC Defendants should have warned him that some of his personal items would not be allowed by the North Dakota prison authorities, and that they should have warned him not to purchase such items before his transfer.  [Doc. No. 147 at 1].  He seeks an order compelling return of and/or reimbursement for his lost property.  The DOC Defendants filed their memoranda in opposition to Plaintiff's

---

appears to be Dr. Derek J. Schmidt, which is noted in Judge Nelson's Order of October 3, 2016 [Doc. No. 248].

motions on August 3, 2016 [Doc. No. 162] and September 12, 2016 [Doc. No. 226].

Papers filed by Plaintiff in connection with other motions in this case contain some additional information about Plaintiff's property. That additional information includes the following:

- North Dakota State Penitentiary staff confiscated the following items on November 12, 2015, from the Property Office because they were "not allowed" or "not allowed from another facility": "2 gray sweatpants, 2 bars of soap, 4 hair food containers, potato chips, 2 bags of cough drops, 2 deodorant [sic], box of tea, ramon noodles [sic], cup of soup, 2 containers of string dental floss, hair conditioner, container of lotion, Bacitracin, 3 Chick-O-Stick, pen with metal clip, 3 wet ones, 3 alcohol swabs, container of bacon bits, container of grated cheeses, container of minced onion, container of beef soup base, cable splitter." (Resp. Summ. J. Ex. 2, Sept. 9, 2016, at 84-85 [Doc. No. 225].)[2]

- On January 27, 2016, Plaintiff was sent and allowed to keep the following items at North Dakota State Penitentiary: "1 Mattress Topper . . . 1-Pillow, 2-Thermal Tops." (Resp. Summ. J. Ex. 2, Sept. 9, 2016, at 87 [Doc. No. 225].)

## II. Applicable Legal Standard

A party moving for a preliminary injunction "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (affirming a denial of a preliminary injunction where the motion was based on new assertions of mistreatment that were entirely different from the claims and requests for relief in the

---

[2] The Court also finds noteworthy the list of medical supplies that, according to the DOC Defendants, were sent with Plaintiff to North Dakota and which Plaintiff does *not* list as having been confiscated: "problem list, current MAR, 5 1/2 months of MD Notes, 2 1/2 months of nurses notes, 3 1/2 months labs + Xrays, 1pkg of XL pull-up briefs, glasses + RX, sent own CPAP machine, 14 hearing aid batteries, 2 closed bottle + one open bottle of Nitro, 2 bottles of Mylanta, 108 tabs of Baclofen, 42 tabs of ear health formula tablet, 26 tabs of Lisinopril, 112 tabs of Fibercon, 11 tabs of Theragran, 32 tabs of Hytrin, 102 tabs of Rincute, 13 tabs of Celexa, 30 tabs of Trazodone, 53 tabs of Lasix." (Paulson Aff. Ex. 5, Aug. 15, 2016, at 1 [Doc No. 179].)

complaint). The purpose of a preliminary injunction is "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Id.*

If the district court concludes the relief sought in the motion is related to the claims asserted in the complaint, the court must then consider the four *Dataphase* factors, which were recently reiterated by the Eighth Circuit: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties [ ]; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 914 (8th Cir. 2015) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "Once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987). When a potential injunction would create an exception to prison rules and regulations, the Court must exercise "judicial restraint . . . in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

**III. Discussion**

    **a. Relationship to the Amended Complaint**

The DOC Defendants argue first that the relief sought by Plaintiff's motions pertains to an injury, i.e., confiscation of personal property by the North Dakota State Penitentiary, that is not related to the conduct asserted in his Amended Complaint, i.e.,

5

inadequate medical treatment, unsafe conditions of confinement, and/or retaliation. The two motions identify three general categories of items: prohibited property, commissary, and canteen [Doc. No. 147 at 1; Doc. No. 171 at 1], and three specific items: personal pictures, long johns, and legal papers [Doc. No. 171 at 1]. While, with the possible exception of the legal papers (which the Court will assume for the sake of argument are papers related to Plaintiff's prosecution of this action), these general and specifically-identified items are not clearly related to Plaintiff's claims of inadequate medical care or unsafe conditions of confinement, an argument could be made that the lost property is an item of damages flowing from the allegedly retaliatory transfer to North Dakota. Accordingly, the Court cannot conclude that his motions are entirely unrelated to his Amended Complaint.

### b. Appropriate Parties

The Amended Complaint was filed on May 23, 2016, when Plaintiff was an inmate in the North Dakota State Penitentiary. (Am. Compl. at 1.) The motions appear to pertain to property allegedly confiscated by officials in North Dakota, who are not a party to this action. There is nothing in the record to suggest that the confiscated property is currently in the possession of the DOC Defendants or that they have any ability to control its disposition. Therefore, to the extent Plaintiff's motion seeks an order compelling the North Dakota State Penitentiary to return the property or reimburse Plaintiff for it, the necessary parties are not before the Court and no such order could be

effective.³  Insofar as his motion seeks restoration of any items that may be in the possession of the DOC Defendants or reimbursement by the DOC Defendants for the value of that property, on a theory that the loss of that property resulted from their alleged wrongdoing, the Court turns next to a consideration of the *Dataphase* factors.

### c. The *Dataphase* Factors

The DOC Defendants argue that even if Plaintiff's motions are related to the conduct alleged in the Amended Complaint, consideration of the *Dataphase* factors requires that the motions be denied.  For the reasons discussed below, the Court agrees.

The Court notes at the outset that Plaintiff's papers in support of his motions offer precious little information, about the allegedly confiscated items or their importance, upon which to evaluate any of the four factors, including whether Plaintiff would suffer irreparable harm if he is not immediately granted the relief he seeks.  Even if the Court gleans and considers additional information from statements and submissions associated with other motions in this case, there is still little if any evidence weighing in favor of an injunction.  Other than legal papers and some personal photographs, the property allegedly confiscated consists of clothing, snack items, hygiene products, and three items that might be characterized as medical supplies—Bacitracin, three "wet ones," and three alcohol swabs.  (Resp. Summ. J. Ex. 2, Sept. 9, 2016, at 84-85 [Doc. No. 225].)

The first *Dataphase* factor considers the "threat of irreparable harm" to Plaintiff by the continued dispossession of these items.  Irreparable harm requires a showing "that

---

³ The Court also notes that nothing in the record indicates whether Plaintiff exhausted his administrative remedies through the North Dakota system, or whether he sought the return of his items upon his departure from North Dakota.

the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010) (citing *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). In general, where harm can be quantified and compensated monetarily at the conclusion of the litigation (if the plaintiff prevails), the courts rarely if ever find that the harm is "irreparable." *See, e.g.*, *Doe v. LaDue*, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007). Here, the value of the medical and food items Plaintiff identified was easily quantifiable. And, even if one assumes for the sake of argument that Plaintiff's financial circumstances make it difficult or impossible for him to replace these articles himself in the interim, there is nothing in the record to support a conclusion that immediate replacement of these items is somehow essential to Plaintiff's health or security.

As for the "personal photographs," Plaintiff has not identified what they were or provided any information to support an argument that irreparable harm would result if they are not immediately replaced. Finally, with regard to the "legal papers," those papers have been the subject of repeated prior motion practice in this case [*See, e.g.*, Doc. Nos. 61, 74]. The DOC Defendants have represented that the papers were made available to Plaintiff while he was in the custody of the North Dakota prison officials, and then again once he returned to Minnesota. (Wherely Aff. [Doc. No. 69]; Rish Aff. ¶¶ 1, 3 [Doc. No. 199]) Moreover, the Court has previously ordered the DOC Defendants to make Plaintiff's legal papers reasonably available to him, and has granted Plaintiff

8

numerous extensions of time to permit him to receive and utilize those papers [*See, e.g.*, Doc. No. 122, 202, 247]. Plaintiff has provided no information to the Court regarding the identity or importance of any legal papers that he claims were unavailable to him. The Court therefore considers this part of Plaintiff's motion to be moot.

As the absence of any showing of irreparable harm is alone sufficient grounds to deny Plaintiff's motions, the Court sees no reason to consider the other *Dataphase* factors.

## IV. Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that

1. Plaintiff's "Motion for Compensation Relief or Reimbursement of Property, Commissary Taken. Also School Time and Pay Compensations." [Doc. No. 147] be **DENIED**; and

2. Plaintiff's "Motion for a Order That Defendants Reimburse Plaintiff Clark for All Property, Canteen, Pictures, that Was Destroyed, Not Allowed, or Missing under the D.O.C. Control, MN and North Dakota." [Doc. No. 171] be **DENIED**.

Dated: November 28, 2016        s/ *Hildy Bowbeer*
                                HILDY BOWBEER
                                United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.